UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KISER, et al.,

       Plaintiffs,

-vs-                                                            Case No. 8:07-cv-1266-T-24-EAJ

CSX REAL PROPERTY, INC. et al.,

       Defendants.
_____/

## ORDER

This cause comes before the Court on two Motions for summary judgment: one was filed jointly by Defendants CSX Real Property Inc. and CSX Transportation Inc. (collectively, "CSX"), and Evansville Western Railway, Inc. ("EWR") (Doc. 71), the other by Defendant City of Winter Haven, Florida ("Winter Haven") (Doc. 72). Plaintiffs oppose the Motions. (Docs. 84, 94.) Defendants CSX and EWR have filed a Reply to Plaintiffs' brief in opposition to their Motion. (Doc. 98.)

## INTRODUCTION

In Plaintiffs' two-count Complaint, they seek (1) a declaratory judgment that Defendants' intended use of a specific piece of property (the "target parcel") to build an intermodal railway facility is unreasonable and constitutes a nuisance or threatened nuisance, and that any actions or decisions taken by Defendant Winter Haven to facilitate such use are null and void; and (2) injunctive relief preventing Defendants CSX and EWR from applying for development permits for—or beginning development on the target parcel of—the proposed railway facility, and preventing Defendant Winter Haven from issuing any permit to anyone for such construction. Defendants CSX and EWR seek summary judgment on the grounds that federal law preempts

state-based actions that would have the effect of regulating the acquisition, construction, or use of a railroad facility. (Doc. 71.) Defendant Winter Haven moves for summary on three grounds: lack of standing, failure to state a claim for nuisance or threatened nuisance, and failure to exhaust administrative remedies. (Doc. 72.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id. Pure issues of law are for the Court to decide and do not necessitate a trial, which is designed to resolve questions of fact.

## BACKGROUND

In unincorporated Polk County, on a parcel of land zoned for residential and agricultural use, live Plaintiffs. Their land is called Sundance Ranch. Plaintiffs live on Sundance Ranch in separate single-family homes, each situated on about five acres of land, where they enjoy country life, board horses, and farm. (Am. Compl., p. 4; Doc. 72, pp. 4–5.) Adjacent to the land runs a CSX rail line, over which an occasional train passes. (Am. Compl., p. 4.)

Immediately adjacent to Sundance Ranch is the target parcel. (Id. ¶ 1.) This parcel comprises 318 acres of land (CSX Ex. B ¶ 6) annexed by Defendant Winter Haven in 2005 (CSX Ex. 12). Prior to its annexation, the target parcel was owned by Polk County and was zoned as "institutional," a designation which would have allowed the land to be used for a government, administration, or safety purpose, such as a utility plant, landfill, or prison. (WH Ex. 35 ¶¶ 8–9.) Specifically, prior to Defendant Winter Haven's annexation of the target parcel, it was used as a wastewater treatment plant. (Id. ¶ 6.)

After Defendant Winter Haven annexed the target parcel, Defendant CSX, a railroad operator, approached the city about buying the target parcel—through which their rail line already ran—to build a large intermodal rail facility. (WH Ex. 13, pp. 1–2.) Eventually Defendants CSX and Winter Haven entered into a purchase agreement. (WH Ex. 16.) The parties' plans for the land then went through several levels of administrative review, which included public hearings, pursuant to which Winter Haven adopted ordinances re-zoning the target parcel in a manner compatible with the rail facility. (See Doc. 72, p. 10 (describing the levels of administrative review and citing the relevant hearing notices and ordinances).)

After the re-zoning, CSX partially assigned its agreement with Winter Haven to Defendant EWR, another railroad operator. (CSX Ex. B ¶ 7.) EWR now owns the target parcel and is funding the development of the rail facility. (CSX Ex. C ¶¶ 6–7.) As of yet, only thirty percent of the development plans are finished (Pl.'s Ex. ii, p. 176), no permits for building the facility have been applied for or issued, and no construction has begun (Doc. 72, pp. 11–12).

There is no dispute that Defendants' plans for the target parcel are extensive. If brought to fruition, the facility will be a "centralized rail transportation center facilitating the movement

3

of consumer goods, and automobiles by rail throughout . . . the Southeastern United States." (CSX Ex. A ¶ 7.) It will be intermodal: consumer goods and automobiles will be transferred between trains and tractor-trailer trucks for shipment, and the facility will provide temporary storage for these items between transfers. (Id. ¶ 9.) The facility will likely host between 60,000 and 80,000 tractor trailers within its first year of operation. (Pl.'s Ex. ii, p. 74.) It will be open for long hours (Id. at 113) and will likely be responsible for the overflow of light (Id. at 152–53), vibrations, and noise into the community around it. This kind of development, say Plaintiffs, will drastically change their rural agrarian lifestyle and, constructed within such close proximity to their community, constitutes a nuisance or threatened nuisance. (Am. Compl.)

## DISCUSSION

### A. Standing

Defendant Winter Haven argues that Plaintiffs have no standing to bring the present action. (Doc. 72, pp. 15–18.) However, where zoning actions injure the legal interests of persons neighboring the zoned property, those persons have standing to sue. Rectory Park, L.C. v. City of Delray Beach, 208 F.Supp. 2d 1320, 1327 (S.D. Fla. 2002) (finding that, because city zoning ordinances are designed in part to protect property values, and plaintiffs' property values were affected by the proposed construction of a parking garage, they had standing to challenge the ordinance); Wingrove Estates Homeowners Ass'n v. Paul Curtis Realty, Inc., 744 So. 2d 1242, 1244 (Fla. 5th DCA 1999) (holding that "[n]eighboring property owners affected by zoning changes have standing to challenge the changes" when they can show that their interests have been adversely affected). Further, there is standing even when injury is contingent on a proposed or impending development on the zoned land. Rectory Park, L.C., 208 F.Supp. at

1327; Hartnett v. Austin, 93 So. 2d 86, 90 (Fla. 1956) (finding that homeowners across the street from a proposed parking area were entitled to sue the city); Renard v. Dade County, 261 So. 2d 832, 838 (Fla. 1972) ("persons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue").

Plaintiffs live less than half a mile away from the proposed railroad facility intended for the newly-zoned target parcel. (Am. Compl. ¶ 13.) The facility's necessarily-coinciding noise, vibrations, and lighting will likely seep into Plaintiffs' community and may drastically decrease their property values. Their property values are legally cognizable interests, and therefore, the injury threatened thereto afford Plaintiffs standing in the present action.

**B.** *Preemption of State Laws Regulating or Outlawing the Construction of Railroad Facilities*

Defendants CSX and EWR argue that Plaintiffs' nuisance and potential-nuisance actions are preempted by federal law, which is the exclusive regulator and remedy-giver with regard to railroad developments. (Doc. 71.) Where federal and state law conflict, a state law is preempted and must cede to its federal counterpart. U.S. Const. art. VI, cl. 2; Gibbons v. Ogden, 22 U.S. 1 (9 Wheat.) 1 (1824) (Marshall, C. J.).

The Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101, et. seq. ("ICCTA") established the predominance of the federal government in railroad-related regulation. Fla. E. Coast Ry. Co. v. City of W. Palm Beach, 266 F.3d 1324, 1329 n. 2 (11th Cir. 2001). The ICCTA created the Surface Transportation Board ("STB"), which has the exclusive power of regulation over "transportation by rail carriers . . . [and] the construction, acquisition [and] operation . . . of . . . side tracks, or facilities, even if the tracks are located . . . entirely in

5

one State." 49 U.S.C. § 10501(b). Further clarifying Congress' preemptive intent, the ICCTA states specifically that the *remedies* provided under the ICCTA "with respect to . . . routes, services, and facilities of [rail] carriers," and "with respect to regulation of rail transportation are exclusive and *preempt the remedies provided under Federal or State law.*" 49 U.S.C. § 10501(b) (emphasis added). Thus, Congress' intention to broadly preempt state laws that effectively manage or govern railroad transportation—as opposed to those that just incidentally affect it—is clear and manifest. Fla. E. Coast Ry., 266 F. 3d at 1331.

This preemptive power over rail "transportation" encompasses regulatory power over any "yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail" and "services related to that movement, including receipt, delivery, elevation transfer in transit . . . storage, handling, and interchange of passengers and property," 42 U.S.C. 10102 (9), as well as all transloading facilities and activities, Fla. E. Coast Ry., 266 F.3d at 1332–33 (finding that while transloading facilities and activities of rail carriers did fall within the ICCTA's jurisdiction, there was no preemption where the facilities and activities were those of a non-rail carrier merely leasing rail land); Canadian Nat'l Ry. Co. v. City of Rockwood, 2005 WL 1349077 at *4 (E.D. Mich. June 1, 2005) (finding that the ICCTA preempted the city's power to issue a stop-work order against a railroad's transloading facility for its failure to obtain environmental permits).

So, the non-incidental regulation of, as well as the remedies associated with, facilities for the transloading activities of rail carriers belong exclusively to the federal government under the STB, and thus state laws that interfere with this sphere of authority are preempted.. See, e.g., Green Mtn. R.R. Corp v. Vermont, 404 F. 3d 638, 640 642 (2d Cir. 2005) (finding that the

6

ICCTA preempted the state's pre-construction permit requirement because the requirement interfered with the building of a rail transloading facility); Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 444 (5th Cir. 2001) (reversing the district court by finding that the plain language of the ICCTA unambiguously preempted a state negligence claim).

State law nuisance actions are not excepted from ICCTA preemption. See, e.g., Suchon v. Wis. Cent. Ltd., 2005 WL 568057, at *3–4 (W.D. Wis. Feb. 23, 2005) (holding that the ICCTA preempted a nuisance action brought against the railroad for the vibrations and fumes that affected neighboring businesses because the action would have had the effect of regulating railroad routes or practices); Maynard v. CSX Transp., 360 F. Supp. 2d 836, 843–44 (E.D. Ky. 2004) (holding that the ICCTA preempted a nuisance claim against a railroad where a side track regularly blocked access to plaintiffs' houses for hours and diminished their property values); Guckenberg v. Wis. Cent. Ltd., 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) (holding that the ICCTA preempted a state nuisance action brought by neighboring property-owners, because such claims would amount to "regulation" of rail transportation).

Here, Plaintiffs' seek to prevent or entirely relocate the railroads' development plan, either directly or by unwilling proxy, the City of Winter Haven. This is a significant, rather than incidental, managing effect on the railroads' operations. Although Defendant City of Winter Haven does not raise preemption as a ground for its Motion to dismiss, the Court finds that it applies by extension. Plaintiffs seek to directly regulate or prevent the railroads' development plan via their claims against Defendants CSX and EWR; their claims against Defendant Winter Haven simply take aim at the same target with a different arrow. All state-born attacks aimed at the target, no matter the weapon used, are rebuffed by the shield of federal supremacy. Because

7

private state-law actions are preempted from hindering the development of railroads and their facilities, Plaintiffs' claims against all Defendants fail.

## **CONCLUSION**

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motions for summary judgment (Docs. 71, 72) are GRANTED. The Clerk is directed to enter judgment in favor of Defendants and to close the case. DONE AND ORDERED this 7th day of November, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record